UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 16-01849 JVS (DFMx)                     Date   July 25, 2017

Title   Ira Pazandeh v. Yamaha Corporation of America

Present: The Honorable   James V. Selna

| Karla J. Tunis | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:               Attorneys Present for Defendants:

Not Present                                     Not Present

**Proceedings:   (In Chambers)   Order REGARDING MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**


Defendant Yamaha Corp. of America ("Yamaha") moved for summary judgment of non-infringement. Mot., Docket No. 50. Plaintiff Ira Pazandeh ("Pazandeh") opposed. Opp'n, Docket No. 53.[1] Yamaha replied. Reply, Docket No. 54.

For the following reasons, the Court **grants** the motion.

**BACKGROUND**

Pazandeh sued Yamaha on two claims: (1) patent infringement, 35 U.S.C. §§ 271(a), (b), and (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq., (the "UCL"). Compl., Docket No. 1 at 8. The Court granted Yamaha's motion to dismiss the claim for violation of the UCL, but denied the motion with respect to infringement. Docket No. 22. Yamaha counter-claimed for declaratory judgments as to non-infringement and invalidity. Docket No. 33 at 12–13.

At issue is U.S. Patent No. 7,577,265 (the "'265 patent"), which is titled "Loudspeaker System Providing Improved Sound Presence and Frequency Response in Mid and High Frequency Rages." Docket No. 1, Ex. K. The patent discloses "[a] speaker system" with three sound radiators arranged to "cause an echo effect improving sound

---

[1] In the future, Pazandeh should comply with Local Rule 11-8's requirement to include "an indexed table of the cases, statutes, rules, and other authorities cited."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | | |
|---|---|---|---|---|
| Case No. | SACV 16-01849 JVS (DFMx) | | Date | July 25, 2017 |
| Title | Ira Pazandeh v. Yamaha Corporation of America | | | |

spaciousness." Id. Abstract.

Pazandeh alleges infringement as to Claims 1, 2, and 4 of the '265 patent by Yamaha's ID Series and STM M28 products. See Gordon Decl., Ex. 3 (Pazandeh's Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions")) at 2.

Claim 1 of the '265 patent recites the following:

A speaker system comprising:

*first, second and third sound radiators, each sound radiator mounted in a respective enclosure*;

the second sound radiator radiating at high audio frequencies and positioned medially between the first and third sound radiators, only the respective enclosure of the second sound radiator having a reflective surface (reflectively dispersive shape) and having a height no greater than the height of the respective first and third radiator enclosures;

the first and third sound radiators radiating at low to mid audio frequencies and tilted generally toward each other;

the sound radiators projecting first, second and third sound vectors, respectively, with the second sound vector oriented vertically and the first and third sound vectors directed generally toward each other al [sic] angles above the horizontal so as to intersect at an inclusive angle of between 90 and 170 degrees;

*the first and third sound radiators spaced horizontally apart by at least a horizontal width of the second sound radiator*, the first, second and third sound radiators providing wide dispersion of sound produced by the first and third sound radiators.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 16-01849 JVS (DFMx)                        Date   July 25, 2017

Title      Ira Pazandeh v. Yamaha Corporation of America

'265 Patent 6:26–47 (emphasis added) (alteration to paragraph format). Claim 2 depends on Claim 1. Id. 6:48–55 Claim 4 recites the following:

> A speaker system comprising;
>
> *first, second and third sound radiators, the sound radiators mounted in respective first, second and third mutually spaced apart sound enclosures*;
>
> the second sound enclosure positioned medially between the first and third sound enclosures, the first, second and third sound radiators projecting first, second and third sound vectors, respectively, with the second sound vector oriented vertically and the first and third sound vectors directed generally toward each other at angles above the horizontal;
>
> *only the second sound enclosure having an upwardly facing semispherical convex reflective surface terminating upwardly* above dispersion angles of the first and third sound radiators such that a portion of sound radiated from each of the first and third sound radiators is reflected from the reflective surface;
>
> the second sound vector directed away from the reflective surface.

Id. 6:66–8:6 (emphasis added) (alteration to paragraph format).

Yamaha argues that the accused devices do not satisfy the three claims' requirement that each sound radiator "be mounted in respective . . . enclosures." Mot. at 1. It asks the Court to construe two claim terms "sound radiator" and "respective enclosure." Id. at 9, 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 16-01849 JVS (DFMx)                 Date   July 25, 2017

Title      Ira Pazandeh v. Yamaha Corporation of America

**LEGAL STANDARD**

**I.      Rule 56**

Summary judgment is appropriate where the record, read in the light most favorable to the nonmovant,[2] indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)[3]; see also MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1373 (Fed. Cir. 2005). The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986). If, and only if, the moving party meets its burden, then the non-moving party must produce specific evidence to rebut the moving party's claim and create a genuine dispute of material fact. MEMC, 420 F.3d at 1373; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If the non-moving party meets this burden, then the motion will be denied. See generally Bose Corp. v. JBL, Inc., 274 F.3d 1354, 1360 (Fed. Cir. 2001).

**II.      Infringement**

"Summary judgment of non-infringement requires a two-step analytical approach. First, the claims of the patent must be construed to determine their scope." Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1304 (Fed. Cir. 1999). This is a question of law. Id. Second, following claim construction, the fact finder compares the construed claims to the accused device or process. Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 812 (Fed. Cir. 2002). "To prove infringement, the patentee must show that the accused device meets each claim limitation either literally or under the doctrine of equivalents." Id. "Literal

---

[2] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." L.R. 56-3.

[3] Rule 56 was amended in 2010. Subdivision (a), as amended, "carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'" Fed. R. Civ. P. 56, Notes of Advisory Committee on 2010 amendments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 16-01849 JVS (DFMx)                    Date  July 25, 2017

Title  Ira Pazandeh v. Yamaha Corporation of America

infringement requires the patentee to prove that the accused device contains each limitation of the asserted claim. Infringement under the doctrine of equivalents requires the patentee to prove that the accused device contains an equivalent for each limitation not literally satisfied." Id. (internal citations omitted).

"Summary judgment is appropriate when it is apparent that only one conclusion as to infringement could be reached by a reasonable jury. Summary judgment of noninfringement is appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, since such failure will render all other facts immaterial." Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1323 (Fed. Cir. 2001) (internal citations omitted). "A patentee ordinarily bears the burden of proving infringement." Medtronic, Inc. v. Mirowski Family Ventures, LLC, 134 S. Ct. 843, 846 (2014).

## III.   Claim Construction

Claim construction is "exclusively within the province of the court." Markman v. W. Instruments, Inc., 517 U.S. 370, 372 (1996). Such construction "must begin and remain centered on" the claim language itself. Interactive Gift Express, Inc. v. Compuserve, Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001). But extrinsic evidence may also be consulted "if needed to assist in determining the meaning or scope of technical terms in the claims." Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1216 (Fed. Cir. 1995).

In construing the claim language, the Court begins with the principle that "the words of a claim are generally given their ordinary and customary meaning." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). This ordinary and customary meaning "is the meaning that the [claim] term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Id. at 1313. "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 16-01849 JVS (DFMx)                    Date   July 25, 2017

Title      Ira Pazandeh v. Yamaha Corporation of America

　　　"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. In such circumstances general purpose dictionaries may be helpful." Id. at 1314 (internal citation omitted). In other cases, "determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art." Id. Then "the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." Id. (internal quotation marks omitted). These sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." Id. (internal quotation marks omitted).

　　　But it is improper to read limitations from the specification into the claim. Callicrate v. Wadsworth Mfg., Inc., 427 F.3d 1361, 1368 (Fed. Cir. 2005) ("[I]f we once begin to include elements not mentioned in the claim, in order to limit such claim . . . we should never know where to stop.") (quoting Phillips, 415 F.3d at 1312). A court does "not import limitations into claims from examples or embodiments appearing only in a patent's written description, *even when a specification describes very specific embodiments of the invention* or even describes only a single embodiment, unless the specification makes clear that 'the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive.'" JVW Enters., Inc. v. Interact Accessories, Inc., 424 F.3d 1324, 1335 (Fed. Cir. 2005) (internal citations omitted) (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | | |
|---|---|---|---|---|
| Case No. | SACV 16-01849 JVS (DFMx) | | Date | July 25, 2017 |
| Title | Ira Pazandeh v. Yamaha Corporation of America | | | |

**ANALYSIS**

## I.    Construction of "Sound Radiator"

The term "sound radiator" appears in all of the '265 patent's claims. Yamaha argues that the Court should construe the term "sound radiator" to mean "at least one loudspeaker and not just the diaphragm of a loudspeaker." Mot. at 9; Docket No. 51-1, Statement of Conclusions of Law ("SCL"), ¶ 1. Yamaha relies on the patent's specification and prosecution history. Pazandeh objects to this construction, but does not propose an alternative. His infringement contentions further state "[e]ach sound radiator is the diaphragm which generates and radiates sound when an electrical signal is supplied to the sound radiator." Infringement Contentions, Ex. B.

### A.    The specification supports Yamaha's proposed construction.

The specification states:

> In one embodiment of the present invention, as shown in FIG. 1, a speaker system includes a first 10, second 20, third 30 and fourth 40 *sound radiators, preferably common loudspeakers* mounted in speaker cabinets, as shown, with the second sound radiator 20 positioned medially between the first 10 and third 30 sound radiators, as shown. In this specification, *each sound radiator may be comprised of one or more loudspeakers, or the equivalent thereof*, and such plural loudspeakers may be placed and or oriented in various ways not limited to the illustrated formats, but which will not diminish the effects produced by the system as disclosed.

'265 patent 4:22–33.

Yamaha argues that this language supports its proposed construction because "[o]ther than a loudspeaker, the '265 Patent gives no example of a sound radiator." Pazandeh argues that the "[i]n only one instance is the sound radiator equated with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 16-01849 JVS (DFMx)                    Date    July 25, 2017

Title    Ira Pazandeh v. Yamaha Corporation of America

a loudspeaker in the '265 Patent and only as 'a' preferred embodiment." Opp'n at 12.

The Court agrees with Yamaha. In addition, other evidence in the specification supports Yamaha's proposed construction. First, the specification uses the term "radiator" in place of loudspeakers, as well as to describe the individual speakers in a loudspeaker system. See, e.g., '265 patent 1:15–17 ("This invention relates generally to a loudspeaker system using plural sound radiators in a specific arrangement . . . ."); 3:14–18 (discussing the prior art's arrangements of "loudspeakers" and "mid-range radiators"). Second, although Figure 1 is only a single embodiment, the specification does not suggest that the inventor intended for "sound radiator" — a fundamental term — to have a different meaning for certain embodiments. See Phillips, 415 F.3d at 1323 (reading the specification in context allows a court to determine whether patentee intended "to provide an example of how to practice the invention in a particular case" or instead intended "for the claims and the embodiments in the specification to be strictly coextensive."). Therefore, the specification supports Yamaha's proposed construction.

### B.    The prosecution history supports Yamaha's proposed construction.

In addition to the specification, courts consider the patent's prosecution history to determine claims' scope. See Phillips, 415 F.3d at 1317. Like the specification, the prosecution history shows "how the [Patent and Trademark Office ("PTO")] and the inventor understood the patent . . . . and whether the inventor limited the invention in the course of prosecution . . . ." Id.

During prosecution, the examiner rejected proposed Claim 13, which claimed "[a] speaker system consisting essentially of: a first, second and third sound radiators, the sound radiators mounted in first, second and third mutually spaced apart enclosures . . . ." Docket No. 50-3, Gordon Decl. Ex. 4 ("Prosecution History") at YCA000064. The examiner rejected the claim as obvious in light of U.S. Patent Application Publication 2001/0031061[4] ("Coombs"):

---

[4] Coombs is attached as exhibit 6 to the Gordon declaration.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 16-01849 JVS (DFMx)        Date    July 25, 2017

Title      Ira Pazandeh v. Yamaha Corporation of America

> Coombs discloses sound radiators mounted in first, second and third enclosure . . . Coombs does not explicitly disclose threes [sic] enclosures, however it would be obvious to one of ordinary skill in the art at the time of the invention that design preferences would determine if the radiators are placed in 3 connecting enclosures or one contiguous enclosure in order to have a desired design or obtain a desired acoustic effect.

Id. at YCA000076. In response, Pazandeh argued that Combs did not disclose "a speaker system comprising: first, second and third sound radiators, the sound radiators mounted in respective first, second and third mutually spaced apart sound enclosures . . . ." Id. at YCA000102.

Based on this prosecution history, Yamaha argues that both the examiner and Pazandeh treated the "sound radiator" as referring to the entire loudspeaker — not only the diaphragm. Mot. at 11. Yamaha argues that if the diaphragms corresponded to sound radiators, then Pazandeh could not have argued that Coombs does not disclose three sound radiators in respective, mutually-spaced enclosures. Id.

The Court agrees. Coombs discloses three loudspeakers, which are arranged in a single enclosure. See Figs. 2, 3. These loudspeakers each contain a diaphragm and frame. Id. Therefore, when the examiner and Pazandeh discussed whether Coombs discloses three radiators in separate enclosures, they were discussing the speakers as wholes — not only their individual diaphragms. This suggests that, in the '265 patent, each sound radiator corresponds to at least one loudspeaker.

In sum, the Court adopts Yamaha's proposed construction in part. The Court construes "sound radiator" to mean "at least one loudspeaker." The Court does not adopt the language "and not just the diaphragm of a loudspeaker."

**II.**      **Construction of "Respective Enclosure"**

Claims 1 and 4 both disclose first, second, and third "sound radiators" mounted in "respective . . . enclosure[s]." Yamaha asks the Court to construe

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 16-01849 JVS (DFMx)                    Date   July 25, 2017

Title      Ira Pazandeh v. Yamaha Corporation of America

"respective enclosures" to mean "that each sound radiator is mounted in its own cabinet or housing." Mot. at 12. Pazandeh argues that the Court should construe the term to mean that "each sound radiator is mounted so that it is acoustically directed and oriented as claimed." Opp'n at 12–13.

### A.   The claim language and the specification support Yamaha's proposed construction.

The claim language, specification, prosecution history, and plain meaning of "enclosure" all favor Yamaha's proposed construction. First, both claims show that each sound radiator is within a separate enclosure. See '265 patent 6:31, 6:66–7:3. Each claim then specifies particular characteristics for each enclosure — suggesting that each enclosure is a separate structure. For instance, Claim 1 states that only the second sound radiator's "respective enclosure" has a "reflective surface" and has "a height no greater than the height of the respective first and third radiator enclosures . . . ." Id. 6:31–34. Likewise, Claim 4 states that the enclosures are "mutually spaced apart," with "the second enclosure positioned medially between the first and third sound enclosures . . . ." Id. 7:1–3.

The specification further suggests that each enclosure is a separate physical structure because it explains the enclosures' physical characteristics. When discussing Figure 1, the specification describes the sound radiators as "preferably common loudspeakers mounted in speaker cabinets . . . ." Id. 4:24–25. The specification also states that "the enclosure of the second sound radiator 20 preferably presents a curved surface" which suppresses "the radiation of sound that bounces . . . between the several radiator enclosures." Id. 5:8–9, 5:21–24. It also describes the enclosures as having "different sloping surfaces" that cause "time delays between corresponding portions of the sound radiation from the two sound sources . . . ." Id. 5:32–34. Figures 2, 3, 4a, and 4b also show physical separation between each sound radiator, suggesting that each sound radiator's respective enclosure is a separate cabinet. See id. Figs. 2, 3, 4a, 4b. Together, these descriptions suggest that the radiators' enclosures are separate physical structures with outer surfaces exposed to the other sound radiators' sound.

In contrast, Pazandeh does not offer evidence to support his proposed construction that "each sound radiator is mounted so that it is acoustically directed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 16-01849 JVS (DFMx)                    Date   July 25, 2017

Title      Ira Pazandeh v. Yamaha Corporation of America

and oriented as claimed." See Opp'n at 12–13. At the hearing, Pazandeh further argued that "enclosure" refers only to the structure orienting each speaker in a particular direction. But Pazandeh again did not point to any evidence in the specification to support his construction. Furthermore, this construction improperly reads out the claim's requirement that each sound radiator be mounted in a respective enclosure. See Elekta Instrument S.A. v. O.U.R. Sci. Int'l, Inc., 214 F.3d 1302, 1307 (Fed. Cir. 2000) (rejecting any construction that would render claim limitation "superfluous").

> **B.      The prosecution history and plain meaning support Yamaha's proposed construction.**

The prosecution history also suggests that the claims include a separate enclosure requirement.

In Pazandeh's original application, Claim 1 did not require an enclosure for any of the sound radiators. Prosecution History at YCA000029–30. The examiner rejected the claims as being anticipated by U.S. Patent 6,134,332 (the "Wiener patent"). Id. at YCA000043–46.[5] The examiner stated that "Wiener discloses wherein an enclosure of the second radiator has a curved surface symmetrical about the second vector . . . ." Id. at YCA000043.

In response, Pazandeh amended Claim 1 to require that each sound radiator be "*mounted in an enclosure*: the second sound radiator positioned medially between the first and third sound radiators . . . ." Id. at YCA000063 (emphasis added). He further required that "the first and third sound radiators [be] spaced horizontally apart by at least a horizontal width of the second sound radiator." Id. Pazandeh argued that these amendment distinguished the application from Wiener because they limited the sound radiators "to positions that do not interfere with the sound projected from the center radiator." Id. at YCA000066. He also added new Claim 13, which would eventually become Claim 4 of the '265 patent. Id. at YCA000064. Claim 13 required that the sound radiators be mounted in "first, second and third mutually spaced apart enclosures . . . ." Id.

---

[5] The Wiener patent is attached as exhibit 5 to the Gordon Decl.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 16-01849 JVS (DFMx)                    Date   July 25, 2017

Title      Ira Pazandeh v. Yamaha Corporation of America

The PTO again rejected Pazandeh's application. Id. at YCA000070. The
examiner stated that Wiener discloses a speaker system consisting of three sound
radiators, each "mounted in an enclosure" and the "second sound radiator
positioned medially between the first and third sound radiators." Id. at YCA000072
(citing Wiener, Fig. 1 elements 14, 16, 18, 3:7–133). The examiner relied on
Figure 1. Furthermore, although Wiener "does not explicitly disclose the first and
third sound radiators spaced horizontally apart by at least a horizontal width of the
second radiator . . . . [I]t would be obvious to one of ordinary skill in the art . . .
that design considerations would determine the spacing of the radiator and radiator
mounts in order to obtain a desired acoustic effect." Id. at YCA000072–73.

Pazandeh amended the claims a second time. He amended Claim 1 to require
that each sound radiator be mounted in "a respective enclosure." Id. at
YCA000096; see also id. (same amendment to Claim 13). Pazandeh argued that
Wiener did not anticipate his claims:

> With respect to Claims 1, 3 and 8 Wiener does not
> disclose or suggest a speaker system as defined in Claims
> 1, 3 and 8. In particular, Wiener does not disclose or
> suggest a speaker system, each sound radiator mounted in
> a *respective enclosure*, a reflectively dispersive shape
> high frequency enclosure placed medially between two
> radiators to achieve wide dispersion of sound.
> Furthermore, with respect to Claims 1 and 3. Wiener
> does not disclose or suggest that the shape has a height
> no greater than the height of the respective first and third
> radiator enclosures.

Id. at YCA000101 (emphasis added). He also stated that "neither Wiener nor
Coombs discloses or suggests . . . the sound radiators mounted in *respectiv*e first,
second and third mutually spaced apart sound enclosures; having an upwardly
facing semispherical convex reflective surface terminating upwardly above
dispersion angles of the first and third sound radiators in a separate enclosure such
that a portion of sound radiated from each of the first and third sound radiators is
reflected away from the reflective surface." Id. at YCA000102 (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 16-01849 JVS (DFMx)                Date   July 25, 2017

Title      Ira Pazandeh v. Yamaha Corporation of America

Following Pazandeh's second amendment, the PTO issued a notice of allowance and allowability. Id. at YCA000118–24. The examiner noted that "[s]peaker systems with reflective surfaces or surfaces used to shape speaker output are well known in the art . . . ." Id. at YCA000122. But the examiner did not find prior art that suggested Pazandeh's "combination of the second sound radiator radiating at high audio frequencies and positioned medially between the first and third sound radiators, only the *respective enclosure* of the second sound radiator having a reflective surface the first and third sound radiators radiating at low to mid audio frequencies and tilted generally toward each other . . . ." Id. at YCA000122 (emphasis added).

This prosecution history shows that the PTO allowed the '265 patent, at least partly, because Pazandeh included a separate enclosure requirement. This requirement distinguished the '265 patent from the prior art. See id. at YCA000122. In his original claims, Pazandeh did not require any enclosure. YCA000029–30. His first amendments required that the radiators be "mounted in an enclosure" but did not specify that each radiator had to be mounted in its *own* enclosure. Id. at YCA000063. Thus, the PTO rejected his application because Wiener disclosed radiators each "mounted in an enclosure," with the "second sound radiator positioned medially between the first and third sound radiators." Id. at YCA000072. But Pazandeh's second amendment introduced the requirement that each radiator be mounted in its "respective enclosure." Id. at YCA000096. And the examiner, in allowing this claim, noted that Wiener did not anticipate an arrangement of respective radiator enclosures in which the second radiator's respective enclosure had defined physical features. See id. at YCA000123.

Furthermore, the examiner cited portions of Wiener that suggest that Wiener's radiators reside within a single enclosure. See Wiener 3:11 (each radiators resides "completely inside the space defined by the sound lens"); see also id. Fig 1 (showing the radiators within a single compartment). Therefore, the examiner relied on Pazandeh's requirement that each radiator have its own respective enclosure, which the examiner and Pazandeh understood to mean a separate physical space.

In opposition, Pazandeh argues that the PTO allowed the patent because of "the claimed orientation of the speakers." Opp'n at 15. But the examiner

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 16-01849 JVS (DFMx)                    Date    July 25, 2017

Title        Ira Pazandeh v. Yamaha Corporation of America

distinguished the '265 patent from the prior art on multiple bases. See Prosecution
History at YCA000122. Only one of these — the first and third radiators' tilt —
concerns the speakers' orientations. Id. The others concern either the radiators'
"respective enclosures" or "high audio frequencies." Id. Furthermore, Pazandeh's
"invocation of multiple grounds for distinguishing a prior art reference does not
immunize each of them from being used to construe the claim language. Rather . . .
an applicant's argument that a prior art reference is distinguishable on a particular
ground can serve as a disclaimer of claim scope even if the applicant distinguishes
the reference on other grounds as well." Andersen Corp. v. Fiber Composites,
LLC, 474 F.3d 1361, 1374 (Fed. Cir. 2007).

Finally, plain meaning supports Yamaha's proposed construction. Merriam-
Webster defines "enclosure" as "something that encloses (as a barrier)." Gordon
Decl. Ex 7 at 747; see Phillips, 415 F.3d at 1323 ("Dictionaries or comparable
sources are often useful to assist in understanding the commonly understood
meaning of words . . . ."). In turn, "to enclose" means "to close in." Gordon Decl.
Ex 7 at 747. Likewise, Merriam-Webster defines "respective" as "separate." Id. at
995. Therefore, the plain meaning of a "respective enclosure" is "something
separate that closes something else in." In this context, that would be a separate
cabinet or container. [6]

In sum, the Court construes "respective enclosure" to mean that "each sound
radiator is mounted in its own cabinet or housing."

## III.    Infringement

Pazandeh alleges that two types of Yamaha speakers infringe the '265
patent: the "ID Series" and the "STM M28." Compl. ¶ 13. He asserts that Yamaha
infringes Claims 1, 2, and 4. Infringement Contentions at 2.

Yamaha argues that the devices cannot infringe because, unlike the '265
patent, each one has loudspeakers mounted in a single cabinet. Yamaha argues that

---

[6] At the hearing, Pazandeh argued that the Court improperly relied on the dictionary definition.
But Pazandeh did not present any evidence to support his argument that the patent's definition of
"enclosure" differs from its plain meaning.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 16-01849 JVS (DFMx)                      Date   July 25, 2017

Title      Ira Pazandeh v. Yamaha Corporation of America

this common cabinet does not satisfy the requirement for "respective enclosures" or Claim 4's requirement that the respective enclosures be "mutually spaced apart." Mot. at 18.

### A.     No genuine dispute of material fact exists with respect to literal non-infringement.

Both the ID Series and the STM M28 consist of a single, hollow cabinet that contains the loudspeakers. See Carcopino Decl. ¶¶ 4–10, Exs. A–H. Each device has two outer, middle-frequency loudspeakers that are housed within the cabinet and mounted to the cabinet's front face. See id. ¶¶ 5–7, 9–10, Exs. B–D, F–H. The ID Series contains one high-frequency loudspeaker, which is located entirely within the cabinet. Id. ¶¶ 6–7, 9–10, Exs. D, G, H. The STM M28 contains two such speakers, which are also completely within the cabinet. Id.

The devices do not infringe because they both contain a single cabinet that houses all of their speakers. Therefore, they do not satisfy the claims' requirement that each sound radiator be contained within a "respective enclosure." See '265 patent 6:31; 6:66–7:3. For the same reason, the devices also do not satisfy claim 4's requirement that the enclosures be "mutually spaced apart." Id. 7:1. As a result, they do not literally infringe Claims 1, 2, and 4 of the '265 patent. See Akzo Nobel Coatings, Inc. v. Dow Chem. Co., 811 F.3d 1334, 1341 (Fed. Cir. 2016) ("Literal infringement exists when every limitation recited in the claim is found in the accused device."). Therefore, Yamaha meets its Celotex burden to show the absence of a genuine dispute of material fact. See 477 U.S. at 322–24; MEMC, 420 F.3d at 1373.

Despite his counter arguments, Pazandeh cannot show a genuine dispute as to whether the devices satisfy the "respective enclosure" requirements. See Celotex, 477 U.S. at 322; MEMC, 420 F.3d at 1373. Pazandeh argues that the devices infringe because each speaker is positioned in a specific direction. He argues that (1) "[e]ach sound radiator is the diaphragm which generates and radiates sound" and (2) "each sound radiator is mounted in a fixed orientation by attachment to an enclosure which fixes the orientation of the sound radiator with respect to the other radiators." Suppl. Infringement Contentions, Ex. B. Based on these premises, Pazandeh argues that "[t]he enclosure is the positioning mounting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 16-01849 JVS (DFMx)                    Date   July 25, 2017

Title      Ira Pazandeh v. Yamaha Corporation of America

surface to fix the relative orientation and not a sound enclosure for shaping sound. Further, each of the sound generators are acoustically isolated and thus separately 'enclosed' with respect to sound radiation . . . ." Id.[7] But, under the Court's claim construction, each sound radiator must include at least one loudspeaker and it must be mounted in a separate cabinet. Therefore, the radiator's fixed orientation cannot satisfy the requirement that each radiator be mounted in a respective enclosure.

Pazandeh also cannot show that the speakers' acoustic insulation creates separate enclosures. See Opp'n at 19–20. First, Pazandeh did not disclose this theory in his infringement contentions and did not move to amend those contentions. See P.L.R. 3.[8] Because Pazandeh did not identify this theory in his infringement contentions he cannot rely on it to defeat summary judgment. See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1363 (Fed. Cir. 2006) (court may sanction party for failure to obey scheduling order). Furthermore, the theory fails on the merits because the sound radiators are not "mounted" to the acoustic insulation. See '265 patent 6:28. Therefore, the insulation does not satisfy the requirement that "each sound radiator [be] mounted in a respective enclosure." See id. 6:27–28.

**B.     No genuine dispute of material fact exists as to non-infringement under the doctrine of equivalents.**

Pazandeh argues that the devices infringe under the doctrine of equivalents "because the sound of each sound radiator radiates with a separate vector, not from a common enclosure thus allowing for the claimed interaction of vectors in the same manner to achieve the same function." Infringement Contentions at 4. Pazandeh also provides a one-page conclusory expert declaration that the single-cabinet Yamaha devices perform identically to a multi-cabinet system. See Docket No. 53-4 ("Koval Decl.") ¶¶ 4–6.

---

[7] Pazandeh's opposition includes Exhibit G from his infringement contentions, which purports to show these respective enclosures. But Pazandeh's chart merely draws arbitrary enclosure borders based on the radiator's positioning — not on any actual barriers within the devices.

[8] This Court has adopted the Northern District of California's Patent Local Rules. Docket No. 11 at 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 16-01849 JVS (DFMx)                     Date   July 25, 2017

Title      Ira Pazandeh v. Yamaha Corporation of America

      But even if the devices project sound similarly to the '265 patent, they do not infringe the doctrine of equivalents because each device's single cabinet materially differs from the three respective enclosures. Therefore, infringement under the doctrine of equivalents would render the "respective enclosure" requirement meaningless. See Akzo, 811 F.3d at 13421 ("Under the doctrine of equivalents, an infringement theory thus fails if it renders a claim limitation inconsequential or ineffective."). The fact that the same acoustical result can be performed with or without enclosures does not satisfy the doctrine of equivalents. There is no equivalent to the "respective enclosure."

      In sum, the Court finds that no genuine dispute of material fact exists as to non-infringement.

## CONCLUSION

      For the foregoing reasons, the Court **grants** Yamaha's motion for summary judgment.

|                        | :    | 00 |
| ---------------------- | ---- | -- |
| Initials of Preparer   | kjt  |    |